[No. 19890.  Department One.  July 16, 1926.]

FIRST GUARANTY BANK, *Appellant*, v. WESTERN CROSS
ARM AND MANUFACTURING COMPANY, *Respondent*.[1]

[1] CHATTEL MORTGAGES (1, 18, 24)—DISTINGUISHED FROM OTHER
TRANSACTIONS—AFFIDAVIT—RECORDING.  Where a lumber com-
pany, having title to standing timber, segregated from the lands,
borrowed money and assigned its rights in the timber as col-
lateral security for the loan, the assignment amounts to a chat-
tel mortgage which would be void as to creditors unless accom-
panied by the affidavit required by Rem. Comp. Stat., § 3780,
and unless filed for record as a chattel mortgage.

[2] LOGS AND LOGGING (1)—SALE OF STANDING TIMBER—EFFECT OF
CONTRACT AND ASSIGNMENT.  Where a contract for the sale of
standing timber did not pass the title to the purchaser, the
assignment of all rights to timber as collateral security for a
loan could not invest the assignee with any lien on the timber,
but would only confer the right to acquire the title by com-
pleting the contract, which was subject to forfeiture in case
tender of performance was not made and kept good.

Appeal from a judgment of the superior court for
Thurston county, Wilson, J., entered November 16,
1925, upon findings in favor of the defendants, in an
action to foreclose a lien, tried to the court.  Affirmed.

*W. N. Beal* and *Peters & Powell*, for appellant.

*C. D. Cunningham* and *J. H. Jahnke*, for respondent.

BRIDGES, J.—In its brief the appellant says that this
is an action to foreclose an equitable lien on standing
timber.  A somewhat detailed statement of the facts,
either admitted or found by us to be shown by a
preponderance of the evidence, will be necessary.

In February, 1909, Emil Morsbach and wife and
Rudolph Morsbach and wife were the owners of cer-
tain lands in Thurston county, in this state, upon which
was some valuable timber.  On that day they entered

[1]Reported in 247 Pac. 1027.

into a written contract with H. H. Martin Lumber Company for the sale of the timber, but not the land. The purchase price was to be $20,000, $2,500 of which was paid down in cash by the purchaser; $2,500 more was to be paid in six months, $5,000 in one year, $5,000 in two years, and $5,000 in three years, with interest on the deferred payments. The lumber company was to have ten years within which to remove the timber, and it was to have the right to go upon the lands for removal purposes. If the lumber company cut any of the timber before the payment of the whole purchase price, then it was to pay at the rate of two dollars per thousand feet of the timber so removed, such sum to be applied upon the purchase price. The lumber company did not make its payments as the contract provided, and, after having made the first deferred payment, paid nothing further for a number of years, except the interest on the deferred payments, which sums were accepted by the Morsbachs. The lumber company, also during this period, paid the taxes as the contract required.

Such being the situation on the 18th day of August, 1922, a supplemental contract was executed by the parties on that day, which, after referring to the original contract, made the purchase price $21,000, as of that date. Two thousand five hundred dollars was paid down and the balance was to be paid as follows: Two thousand five hundred dollars on the 18th day of August, 1923, and four thousand on the 18th day of August in each of the years 1924, 1925, 1926 and 1927. The deferred payments were to draw interest. This supplemental contract further provided that the lumber company was to have until August 18, 1929, in which to cut and remove the timber, and that no timber should be removed until the whole of the purchase price and

interest had been paid. The provisions of the original contract, not inconsistent with those of the supplemental instrument, were to remain in force.

After the lumber company had made the first deferred payment provided by the supplemental contract, it borrowed from the plaintiff, First Guaranty Bank, of Centralia, Washington, the sum of $10,000, which loan was evidenced by a promissory note. At the time of getting the loan, the lumber company "granted, bargained, sold, assigned, transferred and set over" to the plaintiff all of "its right, title and interest in, under and by virtue of" the contracts above mentioned. This instrument of assignment expressly stated that it was to be "collateral security for the payment" of the loan above mentioned. This assignment was dated February 14, 1923, being the date of the note secured, and was duly acknowledged and was filed for record and recorded in the office of the auditor of Thurston county in the record of deeds. The contracts were at the same time delivered into the possession of the plaintiff.

About a year after the making of the note and the assignment of the contracts as collateral security, the lumber company was adjudged a bankrupt. The plaintiff filed with the trustee in bankruptcy its claim and made a showing of the assignment of the above mentioned contracts as security, and demanded that its claim be allowed as a secured claim. Shortly after the lumber company had gone into bankruptcy, the Morsbachs demanded of the trustee in bankruptcy, and also the plaintiff, the interest on the contracts in question, which payments, however, were not made. In October, 1924, the Morsbachs declared a forfeiture of all the rights of the bankrupt officials, the Martin Lumber Company and the plaintiff under the contracts for the purchase of the timber.

At that time there was due, and for some time prior thereto had been due, considerable sums of money under the terms of the contracts, and the taxes on the timber had not been paid as the contracts required. A few days after the Morsbachs had claimed the forfeiture, the plaintiff made a tender to them of all sums in arrears under the contracts and demanded conveyances of the timber. The Morsbachs refused this tender, apparently not only because they had previously declared a forfeiture, but also because they felt they were not in position to give the kind of title to the timber that the plaintiff demanded, because of the bankruptcy proceedings and the plaintiff's interest under its assignment of the contracts for security purposes. The tender does not appear to have been kept good. In the following November, the trustee in bankruptcy sold all the right, title and interest of the bankrupt in and to the property involved in this suit, and a large amount of other valuable property. This sale was made to C. D. Cunningham, who transferred the property purchased by him to the defendant, Western Cross Arm and Manufacturing Company. That defendant subsequently made some payments to the Morsbachs and acquired their interest in the timber in question in this suit.

The complaint alleged most of the facts above mentioned and prayed that it be adjudged that the Martin Lumber Company owed the plaintiff the amount of the note above mentioned, with interest and attorney's fees, and that it "has a lien upon all the timber standing, lying and being upon the lands hereinabove described as against the defendant, and that such lien be foreclosed and the timber be sold in the manner provided by law," and that the defendant be enjoined from cutting any of the timber until the determination of

this suit. The trial court held that the assignment by the Martin Lumber Company to the plaintiff of the timber contracts as security was, in effect, a chattel mortgage, and, since it did not have the statutory affidavit, it was void as against creditors of the lumber company, and that the plaintiff did not have any valid assignment of the interest of the lumber company, and for that reason could not maintain the action. Subsequently, the court made a judgment dismissing the action, and the plaintiff has appealed therefrom.

The appellant seems to contend that the contracts assigned as security were choses in action and, since they were delivered into its possession, they constituted a pledge, and not a chattel mortgage, and that that pledge created an equitable lien on the timber. It also argues that the title to the timber at all times remained in the Morsbachs and did not by the contracts pass to the lumber company. On the other hand, the respondent contends, among other things, that, under the terms of the contracts, the title to the timber passed to the lumber company and that the assignment by it of those contracts had the effect of mortgaging the timber to the bank, and that, since the mortgage did not contain the statutory affidavit, it was void; that, in any event, the assignment of the contracts could not operate as a pledge of the timber, because the bank at no time took possession of it. The argument in the briefs has taken a wide range.

From the view we take of the case, we do not find it necessary to decide whether the contracts did or did not pass the title to the timber, because it appears to us that, in either event, the appellant's position would not be materially changed.

[1] We will assume, for the present, that the original contracts did vest in the lumber company the title

to the timber. We will also assume that the instrument which has been designated an assignment (that is, the instrument given by the lumber company to the appellant) would have the legal effect of transferring the title to the timber to the appellant. Under these assumed facts, the apparent title would be in the appellant, but the actual title would remain in the lumber company, because what the appellant got was nothing but security. The whole transaction, as between the lumber company and the appellant, would amount to a chattel mortgage on the timber, because the timber, having been segregated from the land, became personal property. But the mortgage in the form of an assignment or conveyance would be void as against creditors of the lumber company for the reason that it did not have the affidavit provided for by § 3780, Rem. Comp. Stat. [P. C. § 9747], and because it was filed and recorded in the record of deeds, and not as a chattel mortgage. The respondent is in the position of the creditors of the lumber company, because it was the purchaser at a sale made by the trustee in bankruptcy of all the right, title and interest of the bankrupt in and to the contract and the property covered by it. If our reasoning is sound, the appellant would be in the position, as against the respondent, of being an unsecured creditor, or of having a lien which was unenforcible as against the creditors of the lumber company and as against the respondent, who purchased at the bankruptcy sale.

[2]    But let us now assume that the original contracts between the vendors and vendee did not have the effect of transferring to the vendee the title to the timber, but left it in the vendors until the contracts had been complied with by the payment of the purchase price, taxes, etc. Under these circumstances, the lumber company

could not have any lien upon the timber and could not, therefore, invest the appellant with any lien thereon. All the rights that the appellant could get by assignment of the contracts as security would be the rights which the lumber company had under the terms of the contracts, and those rights would be to pay the purchase price according to the terms of the contracts of sale. Under these circumstances, the appellant would and could not have any lien upon the timber. It would simply have a pledge of the original contracts with the right to comply with and to enforce them. But in this action, it is not seeking the right to carry out the terms of the contracts by paying the purchase price. In its pleadings, it does not tender the purchase price or offer to live up to the terms of the contracts, but assumes that it has some kind of a lien on the timber which, by this action, it is seeking to establish and to foreclose. Its proof has failed to show that it has any enforcible lien. It is true that, at one stage of the controversy, appellant seems to have made an offer to live up to the contract by tendering the balance due. That tender may have been sufficient to have formed the basis for a suit to permit it to comply with the contract and thereby protect itself. But this is not such a suit, and it does not here seek any such relief.

For the reasons given the judgment is affirmed.

Tolman, C. J., Holcomb, and Askren, JJ., concur.

Fullerton, J., concurs in the result.